UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARCUS LEWIS, Jr., Individually and as Natural Father of Marcus Lewis, III, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>JONATHAN HENDERSON, individually and in his official capacity as a police officer, and CITY OF INDIANAPOLIS, INDIANA<br><br>Defendants. | ) ) ) ) ) CAUSE NO.: 1:21-cv-1186 ) ) ) ) ) ) ) ) ) ) |

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

Comes now Plaintiff, Marcus Lewis, Jr., individually, and as natural father of Marcus Lewis, III, Deceased ("Plaintiff"), by counsel, Stephen M. Wagner and Laura W. Swafford of WAGNER REESE, LLP, and for his cause of action against the Defendants, Jonathan Henderson, individually and in his official capacity as a police officer, and the City of Indianapolis, alleges and asserts as follows:

**JURISDICTION AND VENUE**

1. This is a civil rights action brought for violations of the Fourteenth Amendment of the Constitution of the United States of America made actionable pursuant to 42 U.S.C. § 1983.

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 as well as 42 U.S.C. §§ 1983 and 1988. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide Plaintiff's claims arising under state law pursuant to 28 U.S.C. §1367.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391.

**PARTIES**

4. At all relevant times herein, the Plaintiff, Marcus Lewis, Jr. ("Marcus"), was a resident of the City of Indianapolis, County of Marion, State of Indiana. Marcus is also the sole surviving natural parent of Marcus Lewis, III, a minor child ("Baby Marcus"), who was born on May 6, 2020 and then died the same day along with his mother.

5. At all relevant times herein, the Defendant, Jonathan Henderson, was employed as a police officer by Defendant, City of Indianapolis and the Indianapolis Metropolitan Police Department ("IMPD").

6. At all relevant times herein, Defendant Henderson was acting under color of state law and within the course and scope of his employment as a police officer with the City of Indianapolis.  Henderson is sued in his individual and official capacity.

7. At all relevant times herein, Defendant, City of Indianapolis, was a governmental entity which provided various municipal services to its citizens including a police force to patrol the streets and keep citizens safe.

**BACKGROUND**

8. On or about May 6, 2020, at approximately 9:24 PM, Marcus and his girlfriend, Ashlynn Lisby ("Ashlynn"), who was over 8 months pregnant with Baby Marcus, were walking northbound on the shoulder of State Road 37 a/k/a Harding Street, just south of the ramp leading to I-465 East. Marcus and Ashlynn were walking back to a motel where they had been staying.

9. At the same time, Defendant Henderson was northbound on Harding Street approaching the intersection with Thompson Road. Henderson was in his police uniform and

driving to roll call in his police vehicle, which was owned by and registered to the Defendant, City of Indianapolis.

10. Immediately north of the intersection of Harding Street and Thompson Road there are: (1) two left turn lanes leading to the on-ramp to I-465 West, (2) two through lanes for motorists to continue north under the I-465 overpass, and (3) one right turn lane leading to the on-ramp to I-465 East.

11. The speed limit for northbound traffic on Harding Street at this location is 45 mph.

12. Defendant Henderson was traveling northbound on Harding Street in the right through lane when he passed through the intersection with Thompson Road.

13. After passing through the intersection, Henderson quickly accelerated to 78 mph and made an illegal lane shift to the right over the solid white line, moving his vehicle into the right turn lane leading to the I-465 East on-ramp.

14. While looking in his rearview mirror, Defendant Henderson then crossed over the fog line on the right side of the turn lane, operating his vehicle partially on the shoulder of the road.

15. As Defendant Henderson was straddling the fog line, speeding, and looking in his rearview mirror, he struck Ashlynn Lisby who was walking in the shoulder of the road.

16. Defendant Henderson did not take any evasive action in an attempt to avoid colliding with Ashlynn who was walking in the shoulder of the road.

17. The impact caused severe damage to the center front of Henderson's police vehicle and threw Ashlynn down the road.

18. Marcus was just a few feet away when Henderson struck and killed his girlfriend and Baby Marcus.

19. Marcus heard the impact, witnessed the immediate aftermath of this horrible accident, and tried to help Ashlynn. Marcus still has nightmares about it more than a year later.

20. After the accident, Defendant Henderson admitted to investigating officers that he was looking in his rearview mirror when he struck Ashlynn.

21. Defendant Henderson also admitted to investigating officers that he did not see Ashlynn before he struck her.

22. The damage to Henderson's police vehicle was so severe that it registered a recordable event on the vehicle's Bosch Crash Data Retrieval (CDR) system, commonly known as a "black box."

23. After the accident, IMPD investigators retrieved and downloaded the "black box" data from Henderson's police vehicle.

24. According to the "black box" data, Defendant Henderson was traveling 78 mph five seconds before impact and 55 mph when he struck Ashlynn:

Pre-Crash Data -5 to 0 sec [2 samples/sec] (First Record, table 1 of 2)

| Times (sec) | Speed, Vehicle Indicated (MPH [km/h]) | Accelerator Pedal, % Full | Service Brake, On/Off | Engine RPM | ABS Activity (Engaged, Non-Engaged) | Brake Powertrain Torque Request |
|---|---|---|---|---|---|---|
| -5.0 | 78 [126] | 0.0 | Off | 2,416 | non-engaged | No |
| -4.5 | 77 [124] | 0.0 | Off | 2,392 | non-engaged | No |
| -4.0 | 76 [123] | 0.0 | On | 2,368 | non-engaged | No |
| -3.5 | 75 [121] | 0.0 | On | 2,330 | non-engaged | No |
| -3.0 | 73 [118] | 0.0 | On | 2,278 | non-engaged | No |
| -2.5 | 71 [115] | 0.0 | On | 2,196 | non-engaged | No |
| -2.0 | 68 [110] | 0.0 | On | 2,100 | non-engaged | No |
| -1.5 | 65 [105] | 0.0 | On | 2,004 | non-engaged | No |
| -1.0 | 62 [99] | 0.0 | On | 1,910 | non-engaged | No |
| -0.5 | 58 [94] | 0.0 | On | 1,802 | non-engaged | No |
| 0.0 | 55 [89] | 0.0 | On | 1,692 | non-engaged | No |

25. As a result of the collision, Ashlynn was transported via ambulance to Eskenazi Hospital where she was pronounced dead.

26. Upon admission to the emergency room, Baby Marcus was born alive via an emergency caesarian section.

27. Baby Marcus was pronounced dead shortly thereafter at 10:36 PM as a result of blunt force trauma he sustained in the accident.

28. In an attempt to cover-up the true cause of the accident, the IMPD prepared an "Indiana Officer's Standard Crash Report" which lists the primary cause of the accident as the "pedestrian's action." This accident report also states that none of Defendant Henderson's actions contributed to the accident.

29. The accident report does not mention that Henderson was speeding, made an illegal lane shift, and was driving partially on the shoulder of Harding Street when he struck Ashlynn.

30. Today, more than a year after the accident, the IMPD has not disciplined Henderson for his reckless actions that resulted in the deaths of two people.

## CLAIMS FOR RELIEF

### Count I:

### Civil Rights Claim Against Defendant Henderson Pursuant to 42 U.S.C. § 1983

31. Plaintiff hereby incorporates by reference paragraphs 1 through 30 of his Complaint for Damages and Jury Demand as if fully set forth herein.

32. The acts and omissions of Defendant Henderson as described herein were done willfully, wantonly, and maliciously, and with such reckless disregard of the consequences so as

to reveal a conscious and deliberate indifference to the lives of those around him, including but not limited to Ashlynn and Baby Marcus.

33. Defendant Henderson was not on an emergency run when he drove 33 mph over the posted speed limit, made an illegal lane shift, and drove onto the shoulder of the road, striking and killing two people.

34. Defendant Henderson's reckless actions were the result of unhurried judgment and were not taken in a hyper-pressurized environment that law enforcement officers sometimes face.

35. Defendant Henderson's actions as described herein were arbitrary and shock the conscience.

36. Defendant Henderson's reckless actions as described herein were capricious and were taken without good reason and with deliberate indifference to those around him, including Marcus, Ashlynn and their unborn baby.

37. The harm to pedestrians lawfully walking on the shoulder of the road—including Marcus, Ashlynn and her unborn baby—was foreseeable given Defendant Henderson's reckless driving.

38. As a direct and proximate result of the aforementioned conduct of Defendant Henderson, Plaintiff was deprived of the rights, privileges, and immunities secured to him under the Constitution and laws of the United States of America, including his substantive due process rights under the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff, Marcus Lewis, Jr., requests the following relief:

    a.    An award of compensatory damages for the wrongful death of Baby Marcus, including but not limited to funeral and burial expenses, medical and counseling expenses, and loss of Baby Marcus' services, love, and companionship;

    b.    An award of punitive damages to punish Defendant Henderson for his callous and reckless indifference to Plaintiff's Constitutional rights;

    c.    An award of attorney fees and costs pursuant to 42 U.S.C. §1988;

    d.    Trial by jury; and

    e.    All other relief just and proper in the premises.

## Count II:

### State Law Claim for the Wrongful Death of a Child Against Defendants

39.    Plaintiff hereby incorporates by reference paragraphs 1 through 38 of his Complaint for Damages and Jury Demand as if fully set forth herein.

40.    In accordance with Indiana statute, Defendants were timely served with a Notice of Tort Claim on May 18, 2020 by certified mail.

41.    Defendants were also timely served with an Amended Tort Claim Notice on June 23, 2020 by certified mail, which put the Defendants on notice of additional claims Plaintiff asserts herein.

42.    Pursuant to Indiana statute, the Plaintiff's tort claim has been constructively denied as Defendants have had more than ninety (90) days to investigate the claim but have failed to respond in any manner.

43. Defendant Henderson herein is liable to the Plaintiff for Baby Marcus' death as a result of his willful, wanton, reckless, and/or negligent acts and omissions, including but not limited to his failure to keep his vehicle under reasonable control, failure to pay proper attention to the roadway, failure to maintain a proper lookout, failure to keep his vehicle on the roadway, failure to maintain his vehicle at a safe speed, and failure to otherwise operate his vehicle with reasonable care as described further herein.

44. The subject accident and Baby Marcus' resulting death was directly and proximately caused by the recklessness and/or negligence of Defendant Henderson.

45. At the time of subject accident, Defendant Henderson was acting in the course and scope of his employment as a police officer with the Defendant, the City of Indianapolis. Therefore, Defendant, City of Indianapolis, is liable for Henderson's acts and omissions under the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff, Marcus Lewis, Jr., requests the following relief against Defendants:

a. An award of compensatory damages for the wrongful death of Baby Marcus, including but not limited to funeral and burial expenses, medical and counseling expenses, and loss of Baby Marcus' services, love, and companionship;

b. An award of attorney fees and costs pursuant to prevailing Indiana law;

c. Trial by jury; and

d. All other relief just and proper in the premises.

## Count III:

## State Law Claim for Negligent Infliction of Emotional Distress Against Defendants

46. Plaintiff hereby incorporates by reference paragraphs 1 through 45 of his Complaint for Damages and Jury Demand as if fully set forth herein.

47. As a direct and proximate result of the Defendants' wrongful acts and omissions, Plaintiff suffered extreme emotional distress at having to witness his son's death.

48. Accordingly, separate from his claim for the wrongful death of his child, Plaintiff asserts a separate and independent claim against Defendants for negligent infliction of emotional distress.

WHEREFORE, Plaintiff, Marcus Lewis, Jr., requests the following relief against Defendants:

a. An award of compensatory damages for the severe emotional distress Plaintiff experienced as a direct and proximate result of witnessing his son's death;

b. Trial by jury; and

c. All other relief just and proper in the premises.

Respectfully submitted,

**WAGNER REESE, LLP**

*/s/ Stephen M. Wagner*
Stephen M. Wagner, Attorney No. 18248-49
Laura W. Swafford, Attorney No. 32792-29
Attorneys for Plaintiff

## JURY DEMAND

Comes now the Plaintiff, by counsel, and hereby demands a trial by jury against the Defendants on all issues set forth in this cause of action.

Respectfully submitted,

**WAGNER REESE, LLP**

*/s/ Stephen M. Wagner*
Stephen M. Wagner, Attorney No. 18248-49
Attorney for Plaintiff

WAGNER REESE, LLP
11939 North Meridian Street
Carmel, IN  46032
Tel:     (317) 569-0000
Fax:    (317) 569-8088
SWagner@WagnerReese.com