UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARCUS LEWIS, JR. Individually and as Natural Father of Marcus Lewis, III, Deceased, RALPH LISBY as the Personal Representative of the Estate of Ashlynn Lisby, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>JONATHAN HENDERSON Individually and in his official capacity as a police officer, CITY OF INDIANAPOLIS, INDIANA,<br><br>Defendants. | No. 1:21-cv-01186-SEB-DLP |

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND REMANDING TO STATE COURT**

Following a tragic accident in which an Indianapolis Metropolitan Police Officer, while driving to work, hit and killed a pregnant woman, the woman's estate and the baby's father brought two separate suits against the Officer and the City of Indianapolis, respectively. The two suits were consolidated on our docket, after which Defendants filed a Motion for Partial Judgment on the Pleadings, seeking to dismiss all the claims against the Officer as well as all federal claims. As we explain hereafter, the Motion must be granted in full, which leaves only state law claims pending against the City of Indianapolis. As to those, we also conclude that it is appropriate for us to relinquish our supplemental jurisdiction and remand them to state court.

I.       **FACTUAL BACKGROUND**

The well-pleaded factual allegations from both of the First Amended Complaints, which may or may not be objectively true, are accepted as such, along with all inferences in favor of Plaintiffs as the non-moving parties. *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 359 (7th Cir. 1987). On May 6, 2020, at approximately 9:24 p.m., Marcus Lewis Jr. and Ashlynn Lisby were walking northbound along the shoulder of State Road 37, also known as Harding Street, in Indianapolis, Indiana. Lewis and Lisby were returning to the motel where they had been staying, and at the time, Lisby was eight months pregnant with a child Lewis had sired. Meanwhile, Officer Jonathan Henderson of the Indianapolis Metropolitan Police Department was driving northbound on Harding Street approaching the intersection with Thompson Road. Immediately north of the intersection of Harding Street and Thompson Road, two left turn lanes lead to the on-ramp of I-465 West, two through lanes allow motorists to continue northward passing under the 1-465 overpass, and one right turn lane leads to the on-ramp to I-465 East. The speed limit for vehicles at this location on Harding Street is forty-five miles per hour.

Officer Henderson, traveling in the right through lane, passed through the intersection of Harding Street and Thompson Road. While traveling at a speed of seventy-eight miles per hour, Officer Henderson made a lane shift, causing his car to cross over the solid white line into the right turn lane leading to the I-465 East on-ramp. As he merged onto the 1-465 East entrance ramp, Officer Henderson crossed the fog line on the right side of the turn lane, with his vehicle partly on the shoulder on the right side of the road. While glancing in the rear-view mirror as he merged onto the ramp, Officer Henderson struck

2

Lisby, who was walking on the shoulder of the road. Lewis, who was walking a few feet away, witnessed the accident. Officer Henderson's speed was fifty-five miles per hour at the time his car impacted with Lisby. Officer Henderson did not see Lisby before he struck her. At the time of the collision, a nearby streetlamp was not illuminated, which Officer Henderson maintains contributed to the collision.

After the accident, Lisby was transported to Eskenazi Hospital, where she was pronounced dead. Lewis's child was born alive at Eskenazi via an emergency Cesarian section but tragically was also pronounced dead at 10:36 p.m. that same evening. The parties agree that while operating his police vehicle, Officer Henderson was acting within the course and scope of his employment as a police officer employed by the City of Indianapolis. Following the collision, the Indianapolis Metropolitan Police Department prepared an "Indiana Officer's Standard Crash Report" setting forth its conclusion that "pedestrian's action" was the primary cause of the accident. Docket No. 70, at 5. The report also stated that none of Officer Henderson's actions contributed to the accident, though it does not include any mention of the facts that he was speeding, made a lane shift over a solid line, and was driving partially on the shoulder of Harding Street. Officer Henderson was not subjected to any discipline or other sanction by the Indianapolis Metropolitan Police Department.

On August 17, 2020, Lisby's father, Ralph Lisby, as the personal representative of the Estate of Ashlynn Lisby ("Estate"), filed suit for negligence in Indiana state court against Officer Henderson and the City of Indianapolis. On May 12, 2021, Lewis filed suit in our court against Officer Henderson and the City of Indianapolis (collectively,

"Defendants"[1]), alleging: (1) a 42 U.S.C. § 1983 claim against Officer Henderson brought on behalf of his prenatal child, (2) a state law wrongful death claim against Officer Henderson and the City of Indianapolis for the death of his prenatal child, and (3) a state law negligent infliction of emotional distress claim against Officer Henderson and the City of Indianapolis for having witnessed the death of his prenatal child. On December 7, 2021, the Estate filed an amended complaint in state court adding a 42 U.S.C. § 1983 claim. On January 4, 2022, Defendants removed the Estate's suit to our court, which, as we have previously noted, was consolidated with Lewis's suit into a single cause of action on February 14, 2022.

On February 24, 2022, Defendants moved for Partial Judgment on the Pleadings, asserting that, though "[b]oth Plaintiffs have pled proper state law wrongful death claims for the death of Lisby and the prenatal child, as well as a state law tort claim of negligent infliction of emotional distress against the City of Indianapolis," (Docket No. 54, at 2), "the remainder of the claims are improperly pled and should be dismissed." They specifically seek judgment in their favor on the following grounds: (1) Lewis is not a proper plaintiff in a § 1983 claim filed on behalf of his prenatal child, (2) Lewis and Lisby's prenatal child are not legally authorized to bring a § 1983 claim for injuries sustained in utero, (3) the facts of Plaintiffs' Complaints fail to state a claim to support a constitutional due process violation against any party, and (4) Officer Henderson is

---

[1] The Indiana Department of Transportation and the State of Indiana were also initially named as Defendants, but all parties stipulated to their dismissal with prejudice after the Motion for Partial Judgment on the Pleadings was filed. The court entered an order of dismissal as to these two Defendants on March 11, 2022. Docket No. 62.

individually immune from suit for any state law torts he may have committed within the scope of his employment.

On April 19, 2022, Lewis filed his First Amended Complaint which dropped all of his previously asserted federal claims and dismissed Officer Henderson as a defendant. Thus, Defendants' Motion for Partial Judgment on the Pleadings is moot as to Lewis's First Amended Complaint. The claims asserted in the Estate's Complaint remain for resolution here. Defendants' Motion currently seeks judgment on the following two grounds: (1) the facts within the Estate's Amended Complaint fail to state a constitutional due process claim under 42 U.S.C. § 1983 against Officer Henderson; and (2) Officer Henderson is individually immune from suit for any state law tort he may have committed within the scope of his employment. "Should this Motion be granted in its entirety," Defendants explain, "only state law claims would remain, including the Estate's state law tort claim under the Wrongful Death Act for the death of Lisby against the City of Indianapolis, and the claims within Lewis' pending First Amended Complaint would remain untouched." Docket No. 71, at 2.

## II. DISCUSSION AND DECISION

We first address the Estate's negligence claim against Officer Henderson. Because Officer Duncan was indisputably acting within the scope of his employment at the time of the collision, the Indiana Tort Claims Act bars the Estate's tort claim asserted against him personally. Whether the Estate has properly alleged a constitutional violation against Officer Henderson, the answer is also unavailing as to Plaintiffs: because negligence

5

claims such as this cannot support a constitutional violation that would give rise to an award of damages under 42 U.S.C. § 1983, we must dismiss this claim as well. Thus, only state law claims remain in this litigation against the City of Indianapolis. In our discretion, we choose to relinquish supplemental jurisdiction over these claims and remand them to state court.

### A. STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss. A party may move for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedures after the complaint and answer have been filed. "Only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved will a court grant a Rule 12(c) motion." *Moss v. Martin,* 473 F.3d 694, 698 (7th Cir. 2007). "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party," in this case the City of Indianapolis and Officer Henderson, are "entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). "The court may consider only matters presented in the pleadings and must view the facts in the light most favorable to the nonmoving party." *Karaganis*, 811 F.2d at 359. "The court, however, is not bound by the nonmoving party's legal characterizations of the facts." *Id.*

## B.  NEGLIGENCE CLAIM AGAINST OFFICER HENDERSON

Defendants contend that Officer Henderson is immune from personal suit for any state law tort claims otherwise actionable under the Indiana Tort Claims Act, which "limit[s] when a plaintiff may sue a governmental employee personally." *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003). "If a plaintiff alleges that an employee was acting within the scope of his employment . . . the plaintiff is barred from bringing a state law tort claim against the employee personally unless the governmental entity answers that the employee was acting outside the scope of his employment." *Ocasio v. Turner*, 19 F. Supp. 3d 841, 860−61 (N.D. Ind. 2014) (citing Ind. Code §§ 34-13-3-5(b), (c)(2)). Defendants have not so alleged; indeed, the Estate's negligence claim specifically alleges that the collision was "directly and proximately caused by the carelessness and negligence of the Defendant, Jonathan Henderson," and "the Defendant, City of Indianapolis who is responsible for the actions of Defendant, Jonathan Henderson, an employee within the course and scope of his employment." Docket No. 66-1, at 3. Rather than rebut this argument, the Estate, in response to instant Motion, asserted that: "Officer Henderson was within the course and scope of his employment as a police officer employed by the City of Indianapolis at the time of the crash." Docket No. 66, at 3. Thus, the parties agree that Officer Henderson was acting within the scope of his employment when he struck Lisby. Accordingly, as a matter of law, he is immune from suit as to any state law tort claims asserted against him individually. *See, e.g., Lessley v. City of Madison, Ind.*, 654 F. Supp. 2d 877, 902 (S.D. Ind. 2009). The Motion for Partial

7

Judgment on the Pleadings as to the Estate's negligence claim against Officer Henderson is granted.

### C.  § 1983 CLAIM AGAINST OFFICER HENDERSON

The Estate also has asserted a 42 U.S.C. § 1983 claim against Officer Henderson for allegedly violating Lisby's due process rights guaranteed under the Fourteenth Amendment of the United States Constitution, which provides, in relevant part, that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. However, according to well-established precedent, the Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S 693, 701 (1976). The Due Process Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992). The Supreme Court has "accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct and [has] held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 848−49 (1998). "It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849;

8

*see also Daniels v. Williams,* 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property.").

    Here, the Estate's § 1983 claim seeks to hold Officer Henderson liable for actions "done willfully, wantonly, and maliciously," that were "reckless," "dangerous," "arbitrary," and "shock the conscience." Docket No. 66-1, at 5. We note that these allegations conflict with the Estate's negligence claim, which it fully incorporated in support of its § 1983 claim. *Id.* at 2−4. Even ignoring this inconsistency, the Estate's "conclusory allegation of recklessness . . . is insufficient to defeat a motion to dismiss." *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996) (citing *Palda v. General Dynamics Corp.,* 47 F.3d 872, 875 (7th Cir. 1995)). "For a defendant to be reckless in a constitutional sense, he must be criminally reckless." *Id.* "Criminal recklessness—which is the same as 'deliberate indifference'—is a proxy for intent." *Id.* (internal citation omitted). "For this reason, the Supreme Court teaches, the test for 'criminal recklessness' is subjective, not objective." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Under the subjective standard, it is not enough to show that a state actor should have known of the danger his actions created." *Id.* "Rather, a plaintiff must demonstrate that the defendant had actual knowledge of impending harm which he consciously refused to prevent." *Id.* "In other words, the state actor must have sufficient knowledge of the danger that one can infer he intended to inflict the resultant injury." *Id.* "A lesser degree of knowledge does not violate the due process clause." *Id.*

In *Hill v. Shobe*, an on-duty Indianapolis police officer who had run a red traffic light, collided with another vehicle, ultimately killing the passenger. 93 F.3d at 420. Even though the officer was not responding to a police emergency, he was speeding, and, even though the incident occurred sometime during nighttime, the officer was driving without any headlights, emergency lights, or siren. The officer was sued under § 1983 by the passenger's estate, but the Seventh Circuit concluded that the estate could not demonstrate the requisite level of criminal recklessness on behalf of the officer, dismissing the claim on the grounds that "[a]llegations of a public official driving too fast for the road conditions are grounded in negligence, not criminal recklessness, and unintended loss of life resulting from a state employee's lack of due care does not implicate the due process clause." *Id.* at 421. Under the subjective standard, the appellate court ruled, the estate was required to demonstrate that the officer was willing to let a fatal collision occur, which it failed to do by pleading recklessness. "The fact that a public official committed a common law tort with tragic results fails to rise to the level of a violation of substantive due process." *Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 333 (1986)). The Seventh Circuit also ruled that "motor vehicle accidents caused by public officials or employees do not rise to the threshold of a constitutional violation actionable under § 1983, absent a showing that the official knew an accident was imminent but consciously and culpably refused to prevent it." *Id.* "It is insufficient to show that a public official acted in the face of a recognizable but generic risk to the public at large." *Id.* at 421–22.

Here, the Estate incorporated the following facts into its § 1983 claim: (1) Officer Henderson made an illegal lane shift to the right lane of State Road 37 in order to enter the I-465 East on-ramp while traveling at 78 miles per hour, despite posted speed limits of 45 miles per hour, (2) Officer Henderson had diverted his view from the road when he crossed onto the shoulder of the road where he struck Lisby, (3) a nearby street light was not illuminated, which contributed to the collision, and (4) the collision was "directly and proximately caused by the carelessness and negligence" of Officer Henderson. Docket No. 66-1, at 3. The Estate included no other factual allegations in its § 1983 claim beyond the conclusory allegation of recklessness. In response to the Motion for Judgment on the Pleadings, the Estate argues that "Officer Henderson reasonably knew, as most people do, that driving at excessive speeds, carelessly and illegally changing lanes, and driving outside the travel lane in the dark could result in injury to others, including pedestrians or other motorists." Docket No. 66, at 8. "Even more as a police officer," the Estate maintains, "Henderson likely knew more than most the potentially deadly consequences of speeding, careless lane changes, and unsafe driving." *Id.* "His choices in spite of that knowledge and experience show that he was willing to let a fatal collision occur." *Id.* As the Seventh Circuit has previously explained in addressing similar arguments, "[i]t is insufficient to show that a public official acted in the face of a recognizable but generic risk to the public at large." *Hill*, 93 F.3d at 421–22. It is also insufficient simply to allege that Officer Henderson *should* have known of the danger his actions created; for this claim to survive, the Estate must allege that he had "actual knowledge of impending harm which he consciously refused to prevent." *Id.* at 421.

The Estate's reliance on *Flores v. City of South Bend* is unpersuasive. 997 F.3d 725 (7th Cir. 2021). There, a police officer, in attempting to respond to a routine traffic stop (despite not having been requested to intervene), drove 78 miles per hour in a 30 mile per hour zone through a residential area. At another point, the officer drove 98 miles per hour in a residential area, which was 68 miles an hour and three times more than the posted speed limit. The officer ran a red light while traveling through an intersection with an obstructed view and crashed into a car that had been proceeding lawfully, thereby killing the driver. The Seventh Circuit concluded that driving blind through an intersection at 78 to 98 miles per hour could certainly be viewed by a jury as criminal recklessness. *Id.* at 730. "The law does not provide a shield against constitutional violations for state actors who consciously take extreme and obvious risks," and, through his course of action, the officer "was 'willing to let a fatal collision occur.'" *Id.* (quoting *Hill*, 93 F.3d at 421. However, we do not share the Estate's view that "[t]he same is true here as it is in *Flores*." Docket No. 66, at 7. Here, Officer Henderson's conduct is clearly less outrageous: he was not driving through a residential area at speeds greatly exceeding the limit, and he was merging onto an on-ramp to a major highway, which is not a place a driver would ordinarily expect to encounter pedestrians at 9:24 PM. Officer Henderson's actions sound in negligence, and as such, the Estate has failed to allege a constitutional violation on that basis. Accordingly, the Motion for Partial Judgment on the Pleadings must be granted as to the Estate's § 1983 claim, which resolves all the claims brought against Officer Henderson in this litigation.

### D. SUPPLEMENTAL JURISDICTION

The federal supplemental-jurisdiction statute provides that a court "may decline to exercise supplemental jurisdiction" over state-law claims if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Although the decision is discretionary, '[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.'" *RWJ Mgmt. Co., Inc. v. BP Products N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Al's Serv. Ctr. v. BP Products N. Am., Inc.,* 599 F.3d 720, 727 (7th Cir. 2010)). "The presumption is rebuttable, 'but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law.'" *Id.* (quoting *Khan v. State Oil Co.,* 93 F.3d 1358, 1366 (7th Cir. 1996)); *see also Huffman v. Hains,* 865 F.2d 920, 923 (7th Cir. 1989) ("[R]espect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns.").

The Seventh Circuit has identified circumstances that may rebut the presumption:

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009) (internal quotation marks omitted). These circumstances do not portend here. A remand of this

case to state court will moot any statute of limitations restrictions.[2] Having disposed of the federal claims via a judgment on the pleadings, "it is difficult to see how 'substantial judicial resources' have been committed to this case." *Id.* at 515 (citing *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008)). "Finally, we are not prepared to say that the proper resolution of the state-law claims is absolutely clear." *Id.* Because none of the adverse consequences of a remand are threatened here, we elect to, in our discretion, relinquish federal jurisdiction over the supplemental state-law claims and remand the case to state court.

### III. CONCLUSION

Accordingly, Defendants' Motion for Partial Judgment on the Pleadings [Docket No. 53] is **GRANTED**. With all claims against Defendant Henderson being dismissed, the Court finds, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for delay. Accordingly, partial final judgment shall be entered in favor of Defendant Henderson and against Plaintiffs. Moreover, the court relinquishes its supplemental jurisdiction over the remaining state law claims, and therefore, **REMANDS** the case—both the Estate's claims and Lewis's claims against the City of Indianapolis—to the Marion Superior Court as Case No. 49D13-2008-CT-027956. *See* 28 U.S.C. § 1447 (for

---

[2] Even if Lewis's case had not been consolidated with the Estate's claims which were properly removed from state court, 28 U.S.C. § 1367 supplies "a tolling rule that must be applied by state courts." Artis v. District of Columbia, 138 S.Ct. 594, 599 (2018). Specifically, the period of limitations for any claim asserted under our supplemental jurisdiction "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Thus, Lewis could have separately filed this case in state court without a statute of limitations problem.

14

cases removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

IT IS SO ORDERED.

Date: 9/29/2022

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Eileen Archey
Hensley Legal Group
earchey@hensleylegal.com

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT, LLP
ard@rkblegalgroup.com

Christopher Andrew Farrington
BLEEKE DILLON CRANDALL ATTORNEYS
drew@bleekedilloncrandall.com

Sarah Jane Graziano
Hensley Legal Group, PC
sgraziano@hirehensley.com

Thomas J. Jarzyniecki, Jr.
KIGHTLINGER & GRAY, LLP (Indianapolis)
tjarzyniecki@k-glaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT, LLP
jfk@rkblegalgroup.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT, LLP
ejm@rkblegalgroup.com

Mathew Rayman
OFFICE OF CORPORATION COUNSEL
mathew.rayman2@indy.gov

Laura Walker Swafford
WAGNER REESE, LLP
lswafford@wagnerreese.com

Stephen M. Wagner
WAGNER REESE, LLP
swagner@wagnerreese.com